George E. Rex and Florence Rex, Husband and Wife, v. Commissioner.
Rex v. Commissioner
Docket No. 3842.
United States Tax Court
1944 Tax Ct. Memo LEXIS 34; 3 T.C.M. (CCH) 1260; T.C.M. (RIA) 44382; November 27, 1944
*34 James A. O'Callaghan, Esq., for the petitioners. Loyal E. Keir, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: The petition herein was filed for the purpose of redetermining deficiencies in income taxes for the calendar years 1939 and 1940, in the amounts of $302.41 and $2,166.47, respectively. Petitioners assign as error the Commissioner's action in adjusting their net income for each of the taxable years by increasing the amount of the long-term capital gain which they reported from the sale of preferred capital stock of the Wood Preserving Corporation (hereinafter sometimes referred to as Wood Corp.). Petitioners also allege an overpayment for the calendar year 1940. Effect will be given to other uncontested adjustments made by the Commissioner to the net income of petitioners for the taxable years herein involved, in the decision to be entered under Rule 50. The following issues are presented: (1) What is the cost basis for determining gain or loss on the sale of the preferred stock of Wood Corp. by petitioners in 1939 and 1940? The only disputed items are (a) the cost of a block of 86.7 shares of the common stock of National Lumber *35 and Creosoting Co. of Texas (hereinafter sometimes referred to as the Texas Co.), and (b) the cost of a block of 105 shares of the common stock of National Lumber and Creosoting Co. of Delaware (hereinafter sometimes referred to as the Delaware Co.). (2) Is the gain realized by petitioners on the redemption of 150 shares of preferred stock of Wood Corp. taxable in 1940? From evidence adduced, we make the following Findings of Fact Petitioners are individuals (husband and wife) residing, during the taxable years herein involved, in Raytown, Missouri. They filed their individual income tax returns for the calendar years 1939 and 1940 with the collector of internal revenue at Kansas City, Missouri. Petitioners, during the taxable years herein involved, kept their accounts and filed their returns on the cash receipts and disbursements basis. Petitioner, George E. Rex (hereinafter referred to as Rex), purchased 95 shares of common stock of the Texas Co. on March 11, 1920, at $100 per share, and 86.7 more shares of the same stock some time in 1923, prior to October 1, 1923, at a cost of not less than $95 per share. No record could be found of this latter transaction, although the *36 petitioners tried to obtain such a record from the stockbrokers who sold the stock and also searched the records of the Texas Co., the Delaware Co., and Koppers Company (the successor to the Delaware Co.). On or about January 5, 1943, Rex received a letter from one William M. Logan, former assistant secretary and assistant treasurer of the Texas Co., in response to a letter from Rex to a certain Joshua, president of the Texas Co. The letter reads in part as follows: "I have copy of your letter to Josh of Dec. 24th, and have searched my personal files for any information on the subject. Mr. Mead was Secretary & Treasurer of the Company at that time and I was Asst. Secy. & Asst. Treas. Of course, I don't have a record of your N.L. & C. Co. Stock account, but I did find that you held 95 shares of the old Common Stock at time of the October 1923 Reorganization, - which gave you 323 shares of the new Common (you received 3 2/5 new shares for each old share). You state that you received 612 of the new shares which is 289 shares in excess of the 323 shares above. Quite a little time was consumed in completing the exchange of the old Stock for the new account of unavoidable delays in the surrender *37 of some of the old certificates, and a number of sales of the new Stock were made during that time for consummation when the new certificates were obtainable, - and as the exchange of old Stock for the new was as of Oct. 1, 1923, all the new certificates were so dated though their actual issuance was at a later date. I feel certain that you purchased the above additional 289 shares of the new Stock in this manner, and I believe you purchased them through Jno. T. Logan. I also feel certain that the price was $60.00 per share. I purchased a number of shares at that time at that price. The Company's business was improving and I feel certain there were no sales for less." Rex kept no books of account between March 11, 1920, and March 5, 1931. In 1923, the Delaware Co. took over the Texas Co., and on October 1, 1923, Rex received 618 shares of common stock of the Delaware Co. in exchange for his 181.7 shares of common stock of the Texas Co. On December 10, 1928, there was a further stock split-up as a result of which Rex received 2,472 shares of Delaware Co. common stock in exchange for his 618 shares of the same stock. On May 15, 1929, Rex exercised certain stock rights, whereby he was *38 permitted to purchase one share of Delaware Co. common for each two shares he held by paying $10 per share for each share of new stock, and, as a result thereof, he purchased 1,236 additional shares of Delaware Co. common stock for $12,360, thus making the total of his holdings of Delaware Co. common stock 3,708 shares. On March 1, 1929, Rex acquired 105 more shares of Delaware Co. common stock by exchanging therefor 30 shares of Texas Co. preferred stock which he purchased in his wife's name some time between January 1, 1920, and December 31, 1921, at a total cost of $2,890. He transferred 430 shares of Delaware Co. common stock to his son and niece on May 15, 1929, leaving him a balance of 3,383 shares. In 1931, Wood Corp. was organized and it took over Delaware Co. Rex was issued 1,184 shares of 6 per cent cumulative preferred stock in Wood Corp. in exchange for his 3,383 shares of Delaware Co. common stock on March 5, 1931. These 1,184 shares of Wood Corp. preferred stock had a cost basis of $29,266.54, or $24.72 a share. * He sold 1,034 shares on the following dates and for the following amounts: Costs
Number of
Claimed
Sales
Date
Shares
per Return
Prices
5-16-31
250
$ 7,125.00
$20,000.00
11-21-36
34
1,519.00
2,890.00
4-15-37
100
4,464.00
8,500.00
5-2-39
50
4,246.50
6-8-39
50
4,496.50
3-4-40
550
53,508.50
Total
1,034
$13,108.00
$93,641.50
*39 At some time prior to January 1, 1941, Wood Corp. determined upon a plan of liquidation. That plan provided in part as follows: "1. The Wood Preserving Corporation shall distribute all of its property and assets of every kind and nature and wheresoever situate as follows: "(A) To the holders of record on December 27, 1940 (except Koppers Company) of its 6% cumulative preferred stock such amounts of cash to be made available by checks dated December 31, 1940, mailed at the close of business on December 28, 1940, as paid holders shall be entitled to upon the redemption in voluntary liquidation of said preferred stock under the terms of the certificate of incorporation of The Wood Preserving Corporation, which is the par value of said shares of $100 per share plus a premium of $5 per share plus accrued dividends from October 1, 1940, to December 31, 1940, of $1.50 per share, or a total of $106.50 per share." Pursuant to this plan, Rex surrendered the 150 shares of Wood Corp. preferred *40 stock, of which he was then the owner. A check therefor in the amount of $15,975, dated December 31, 1940, and drawn on Mellon National Bank in Pittsburgh, Pa., was sent through the mail from Pittsburgh, Pa., to "Geo. E. Rex, P.O. Box 426, Raytown, Mo." No deliveries of mail are made by the post office to the homes of residents of Raytown, Mo. Rex was in the habit of calling for his mail daily at the post office, where he had a personal lockbox during 1940 and 1941. January 1, 1941, which was Wednesday, was a postal holiday, and on that day nothing was done with mail received at the Raytown Post Office. The normal amount of time required for the transmission of a letter from Pittsburgh, Pa., to Raytown, Mo., is three days. Mail was ordinarily delayed somewhat during the Christmas and New Year holidays. On the morning of January 2, 1941, Rex for the first time found a letter containing this check for $15,975 from Wood Corp. in his box at the post office. As the check shows, it was deposited in a bank in Kansas City, Mo., on January 2, 1941, and was paid by a Pittsburgh Bank on January 3, 1941. Payment for the 150 shares of Wood Corp preferred stock redeemed from petitioners as part *41 of the liquidation of Wood Corp. was received by petitioners in the calendar year 1941. The gain from the redemption of these 150 shares was included in petitioners' Federal income tax return for 1940 and in an amended return for 1940 which was filed on December 20, 1941. The sole reason for filing an amended return was to claim an increased cost basis for the 150 shares. Petitioners' returns for 1940, both the original and the amended return, were prepared by Rex's nephew, based upon information given the latter by Rex. Although Rex informed his nephew that the check he received from Wood Corp. was dated December 31, 1940, and that his stock in Wood Corp. was called as of December 31, 1940, he did not at any time tell his nephew that he did not receive the check until January 2, 1941. This latter fact was made known by Rex some time in 1943 to an individual who succeeded Rex's nephew as Rex's tax adviser. Petitioners' income tax return for 1941 reflected a loss in the amount of $7,076.48. Opinion The first question presented, namely, the basis for gain or loss of Wood Corp. preferred stock sold by petitioners during the taxable years herein involved, is solely one of fact. In *42 performance of our function "to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences, [1] we have determined that basis to be $24.72 per share. Discussion of the facts further than stated in our findings appears unnecessary. The second question presented is whether the gain realized by petitioners on the redemption of 150 shares of preferred stock of Wood Corp. is taxable in 1940. Rex was the owner of 150 shares of the preferred stock of Wood Corp., when the latter decided, pursuant to a plan of liquidation, to distribute to its "holders of record on December 27, 1940 (except Koppers Company), of its 6% cumulative preferred stock such amounts of cash to be made available by checks dated December 31, 1940, mailed at the close of business on December 28, 1940 * * *." On January 2, 1941, George E. Rex, who was on a cash basis, received a check from Wood Corp. in the amount of $15,975 in redemption of his 150 shares. This check was dated December 31, 1940, and was drawn on the Mellon National Bank in Pittsburgh, Pa. There is no evidence when the check *43 was actually mailed from Pittsburgh, but under ordinary circumstances it would take approximately three days for a letter to reach Raytown, Mo., from Pittsburgh. December 28, 1940, was Saturday and January 1, 1941, was a postal holiday, on which nothing was done with mail received at the Raytown Post Office. We think the fact that the petitioner in his return, and in his amended return, for 1940 included the dividend in income is satisfactorily explained. On such facts, showing actual receipt of the check on January 2, 1941, taxation of the amount in 1940 must depend upon constructive receipt. We said in the case of [Dec. 12,493], at page 889, that, "The test of applying the doctrine of constructive receipt is the availability of the income for the taxpayer's use and enjoyment in the taxable year." In , a corporation declared a dividend in November, 1924, payable on or before the following December 31st. Its check dated December 31st, for the amount attributable to the stock owned by the taxpayer therein, who was on the cash receipts and disbursements *44 and calendar year basis, was received by him on January 2, 1925. In November, 1929, another dividend was declared, payable on or before the following December 31st, and the corporation's check for the taxpayer's portion was received by him on January 2, 1930. The Commissioner assessed those dividends as part of the taxpayer's income for the respective years 1924 and 1929. The Supreme Court held that, "In the disclosed circumstances the dividends cannot properly be considered as cash or other property unqualifiedly subject to the petitioner's demand on December 31st." The opinion then continues as follows: (p. 215): * * * It was the practice of the Company to pay all dividends by checks not intended to reach stockholders until the first business day of January; there is nothing to show that petitioner could have obtained payment on December 31st, he did not expect this and the practice shows the company had no intention to make actual payment on that day. Nothing indicates that it recognized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. The checks did not constitute payments prior to their actual receipt. The mere promise *45 or obligation of the corporation to pay on a given date was not enough to subject to petitioner's unqualified demand "cash or other property"; and none of the parties understood that it was. [Italics supplied.] We are of the opinion that the italicized language quoted above is decisive of this issue in the present case. We have often said in substance that "the doctrine of constructive receipt is one to be applied sparingly. It is only in unique circumstances and a clear case that the invoking of this doctrine will be approved." . . In , we interpreted the above language from the Avery case to hold that dividends, payable by check mailed so late in the year that they are not received by the stockholder until the next year, to be taxable to the recipient in the year of receipt. The Harkness case involved dividends declared in November 1929, checks therefor mailed on December 31, 1929, and received on, or after, January 2, 1930, to a stockholder on a cash basis. *46 Such situation is indistinguishable from the instant case. We there said: It seems to us that the Supreme Court, in deciding the Avery case, has not relied upon the facts in that case which, like the facts in the Adams case, might serve to distinguish it from such cases as , and has decided that where dividends are declared prior to the end of the year but are to be and are paid by checks mailed by the corporation so late in the year that they are not received by the stockholder until the following year, such dividends are taxable to a stockholder on the cash receipts and disbursements basis in the year when the check is received. Thus, as we interpret the decision of the Supreme Court in the Avery case, it is dispositive of the present issue and upon the authority of it the petitioner's contention that the dividends in question are taxable to him for 1930 and not for 1929 is sustained. In , though the facts involved a dividend in property, the Avery case, supra, is cited as authority for the statement: "From these *47 decisions it can not be denied that a cash dividend can not be charged as income to the taxpayer until he had received it." In , referred to with approval in the Avery case, supra, dividend checks were mailed on December 31, 1924, and received January 2, 1925, to a director-vice president of the issuing corporation who had been present at the directors' meeting on December 26, 1924, when the dividend was declared. He was on a cash basis. The amounts represented by the checks were held taxable in 1925. The petitioner here, not a corporate officer and far removed from the bank issuing the check for the corporation, is seen to have much less opportunity to have the dividend available to him, than in the Adams case. See also ; (745). The respondent relies upon the opinion of the Circuit Court of Appeals for the Fourth Circuit in the case of , affirming . *48 It is distinguishable from the instant case. It involved a stock dividend declared in August 1933, though the certificates were not issued to stockholders until March 1934. Consideration of the rights of stockholders in corporate stock owned by the corporation, without delivery of certificates, enter into the conclusion there reached. We do not think it governs in the matter of a check mailed so late in one year as to be received in the next by a cash-basis stockholder. [2]
We are of the opinion that the facts in the instant case do not meet the tests applicable to income constructively received, and, therefore we hold that the gain realized by petitioners on the redemption of the 150 shares of Wood Corp. preferred stock is not taxable in the calendar year 1940. *49 Decision will be entered under Rule 50. Footnotes
*. Computed as follows: The total cost of petitioner's 3,813 shares was $32,986.50. At that rate 3,383 shares cost Rex $29,266.54, so that the 1,184 shares received for 3,383 shares cost $24.72 a share.↩
1. .↩
2. The Circuit Courts of Appeals for the Third Circuit ( , and the Seventh Circuit ( , in cases tried with and involving the same facts as ,↩ reversed the Tax Court of the United States.